Stanley Stephens was convicted of the intentional murder of his wife, Annie, and his nine-year-old son, Nicholas. The murder was made capital because two or more persons were murdered by one act or pursuant to one scheme or course of conduct. § 13A-5-40(a)(10), Ala. Code 1975. By a vote of 10-2, the jury in its advisory verdict recommended that Stephens be sentenced to death. The trial court accepted the jury's recommendation and sentenced him to death. The Court of Criminal Appeals affirmed Stephens's conviction and sentence.Stephens v. State, 982 So.2d 1110 (Ala.Crim.App. 2005).
This Court granted Stephens's certiorari petition to review the sole issue presented by that petition: whether an incorrect jury instruction in the sentencing phase of Stephens's capital-murder trial violated Stephens's statutory right to an advisory verdict by a jury.[1] We hold that it did, and because we cannot conclude beyond a reasonable doubt that the error was harmless, we reverse and remand.
 I. Facts and Procedural History
The facts of the offense are stated in detail in the Court of Criminal Appeals' opinion and will not be repeated here except as necessary to an understanding of *Page 1150 
the issue before us. Stephens and his wife Annie had lived in a mobile home in Lee County. The two had separated in early 1999. Stephens continued to live in the mobile home; Annie and their three children moved in with Annie's father. On August 2, 1999, Annie made two trips to the mobile home to wash clothes. On the second trip, her son Nicholas went with her. About 30 minutes after Annie and Nicholas arrived with the second load of laundry, Stephens drove up to the mobile home. Neither Annie nor Nicholas was again seen alive. Stephens admitted to officers responding to a telephone call from neighbor that he had killed Annie. He also told a deputy where her body was located.
The officers found the bodies of Annie and Nicholas in the mobile home. Annie had been cut and stabbed 30 times; several of the wounds had pierced her lungs and heart. A belt was looped around her neck and pulled tight. Bruising showed that the belt had been applied and that she had been struck in the face before she died. Nicholas had been cut and stabbed 37 times. Several of the wounds had pierced his lungs, heart, liver, and stomach. In addition, his throat had been cut and the underlying tissue was exposed.
Based on these facts, the State argued during the sentencing phase that the statutory aggravating circumstance found in § 13A-5-49(8), Ala. Code 1975 — that the murders were especially heinous, atrocious, or cruel when compared to other capital offenses — existed. The State also introduced evidence indicating that the statutory aggravating circumstance found in § 13A-5-49(2) — that the defendant had previously been convicted of a violent felony — existed because Stephens had been convicted of second-degree assault for firing a shotgun at Annie in 1992. This evidence was sufficient for the jury to find that those two statutory aggravating circumstances existed. By special interrogatory, the jury indicated that it had found beyond a reasonable doubt that both of these statutory aggravating circumstances were present.
However, the trial court also instructed the jury that the fact that Stephens "intentionally caused the death of two or more persons by one act" was a statutory aggravating circumstance, and that the guilty verdict in the penalty phase established that this aggravating circumstance applied to Stephens. If the offense had been committed on or after September 1, 1999, that instruction would have been correct.[2] Stephens committed the murders on August 2, 1999. The jury should have been instructed that it could find a maximum of two aggravating circumstances — that the offense was especially heinous, atrocious, or cruel and that the offense was committed by an individual who had previously been convicted of a violent felony. Instead, the jury was effectively instructed that it was required by its verdict in the guilt phase to find as a matter of law the existence of one aggravating circumstance — that Stephens caused the deaths of two persons by a single act — and that it could find as many as two others.[3] *Page 1151 
To its credit, the State brought this error to the trial court's attention while Stephens's motion for a new trial was pending. The trial court immediately continued the motion and ordered briefs and oral arguments on whether a new sentencing hearing was required. Answering that question in the negative, the trial court denied Stephens's motion for a new trial and again sentenced Stephens to death.
 II. Analysis
Under Alabama law, the jury plays an essential role in the capital-sentencing process:
 "(a) Unless both parties with the consent of the court waive the right to have the sentence hearing conducted before a jury as provided in Section 13A-5-44(c), it shall be conducted before a jury which shall return an advisory verdict as provided by subsection (e) of this
section.
 . . .
 ". . . .
 "(e) After deliberation, the jury shall return an advisory verdict as follows:
 "(1) If the jury determines that no aggravating circumstances as defined in Section 13A-5-49 exist, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole;
 "(2) If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist but do not outweigh the mitigating circumstances, it shall return an advisory verdict recommending to the trial court that the penalty be life imprisonment without parole;
 "(3) If the jury determines that one or more aggravating circumstances as defined in Section 13A-5-49 exist and that they outweigh the mitigating circumstances, if any, it shall return an advisory verdict recommending to the trial court that the penalty be death."
§ 13A-5-46, Ala. Code 1975. In this case, the jury was instructed that three statutory aggravating circumstances potentially existed; the jury found all three aggravating circumstances existed and that they outweighed the mitigating circumstances. However, only two of those aggravating circumstances were actually available as statutory aggravating circumstances in this case. The question thus presented by this appeal is whether the incorrect instruction requires a new sentencing hearing. The Court of Criminal Appeals held that it does not, concluding 1) that the trial court did not err in so instructing the jury, and 2) that, even if it did err, the error was harmless. See Rule 45, Ala. R.App. P.
This Court decided a similar issue in Ex parteWilliams, 556 So.2d 744 (Ala. 1987). In that case, the State erroneously pleaded as an aggravating circumstance that the defendant had been under sentence of imprisonment at the time of the offense.
 "`[T]he trial court improperly instructed the jury, during the sentencing phase of the trial, that they could consider the fact that the capital offense was committed by a person under sentence of imprisonment as an aggravating circumstance, as provided in § 13A-5-490), Code of Alabama (1975). It was later established at the sentencing hearing, however, that the appellant was not on probation, nor was he on parole, at the time that the crime was committed.'"
556 So.2d at 745 (quoting Court of Criminal Appeals' opinion,Williams v. State, 556 So.2d 737, 740-41
(Ala.Crim.App. 1986)).
In Williams, as in this case, the trial court realized that the jury had considered an invalid aggravating circumstance and *Page 1152 
the trial court considered only the valid aggravating circumstances in reaching its own sentencing decision. Nevertheless, this Court reversed Williams's death sentence. In doing so, the Court stressed the importance of the statutory right to a fair advisory verdict by the jury:
 "The legislatively mandated role of the jury in returning an advisory verdict, based upon its consideration of aggravating and mitigating circumstances, can not be abrogated by the trial court's errorless exercise of its equally mandated role as the ultimate sentencing authority. Each part of the sentencing process is equally mandated by the statute (§§ 13A-5-46, -47(e)); and the errorless application by the court of its part does not cure the erroneous application by the jury of its part. . . . To hold otherwise is to hold that the sentencing role of the jury, as required by statute, counts for nothing so long as the court's exercise of its role is without error."
556 So.2d at 745.
The Court of Criminal Appeals' opinion in this case sought to distinguish Williams. The aggravating circumstance inWilliams "that the offense had been committed by a person under a sentence of imprisonment — was factually untrue and therefore legally inapplicable. The aggravating circumstance in this case — that Stephens had murdered two persons pursuant to one act or course of conduct — was, although supported by the facts, invalid as a matter of law. The Court of Criminal Appeals found this distinction significant, but we do not. In both cases, the jury was instructed that a particular aggravating circumstance applied when, as a matter of law, it did not.
The State also attempts to distinguish Williams, on the following basis:
 "Thus, in Williams, the jury was allowed to consider as aggravation facts that were absolutely untrue and clearly did not apply to the defendant.
 "This factor, however, was not the basis for the reversible error found in Williams. Instead, the error occurred when the trial court sentenced Williams to death based on the trial court's reweighing of the aggravating and mitigating circumstances, without regard to the jury's advisory verdict and the legislative importance assigned to the jury's advisory verdict."
(State's brief at 18) (emphasis in original). This argument misreads Williams. The holding in that case was not based on an error by the trial court in pronouncing sentence; in fact, it assumed "errorless application by the court of its part." 556 So.2d at 745. Instead, the key to the holding inWilliams was that the jury was allowed to consider an invalid aggravating circumstance. The undisputed record in this case shows that the jury here was allowed to consider an invalid aggravating circumstance. In all material respects, we have before us the same factual scenario as existed inWilliams.
The State argues alternatively that the Court should affirm Stephens's death sentence on the authority of Ex parteKyzer, 399 So.2d 330 (Ala. 1981), and Edwards v.State, 515 So.2d 86 (Ala.Crim.App. 1987). The Court of Criminal Appeals also relied on those cases in reaching its conclusion that the instruction at issue in this case was not error.
In Kyzer, this Court suggested that a trial court could consider as an aggravating circumstance the fact that the defendant committed two murders by a single act, even though that was not listed as a statutory aggravating circumstance in § 13-11-6 (now § 13A-5-49), Ala. Code 1975. However, the discussion in Kyzer of *Page 1153 
the propriety of Kyzer's sentence was pure dicta. We reversed Kyzer's conviction and remanded the case because of an error that had occurred in the guilt phase of his trial,399 So.2d at 333, and the discussion of aggravating circumstances in sentencing was completely irrelevant to our decision.[4]
In Edwards, the Court of Criminal Appeals, relying onKyzer, stated that a sentencing jury could consider as an aggravating circumstance the fact that the defendant had killed two or more persons by a single act, even though that circumstance was not then included in the list of statutory aggravating circumstances.[5] In reaching its conclusion that the instruction was not error, the Court of Criminal Appeals characterized Kyzer as having
 "held that `the jury and the trial judge at the sentencing hearing may find the "aggravation" averred in the indictment as the "aggravating circumstance," even though the "aggravation" is not listed in § 13-11-6 [now § 13A-5-49] as an "aggravating circumstance."'"
515 So.2d at 93 (footnote omitted). As stated above, however,Kyzer did not "hold" anything with respect to sentencing. Our discussion of aggravating circumstances in that case was premature and should not be persuasive in this case.
Moreover, the dicta in Kyzer conflicts with the plain language of the Alabama Criminal Code (as the Kyzer
Court itself acknowledged).[6] Section 13A-5-49, Ala. Code 1975, states that "[a]ggravating circumstances shall be the following." The language "shall be" — as opposed to "shall include" — indicates that the list is intended to be exclusive. This is even more apparent when § 13A-5-49 is compared with § 13A-5-51, which expressly states that "[m]itigating circumstances shall include, but not be limited to, the following." The statutory scheme clearly permits the trial court and advisory jury to consider only those aggravating circumstances listed in § 13A-5-49. Our dicta to the contrary in Kyzer was incorrect.
Williams was soundly reasoned, and we hold that it controls in this case. It was error for the trial court to instruct Stephens's jury that it could consider as a statutory aggravating circumstance a circumstance that was not listed in the statute at the time of the offense. Moreover, we cannot conclude beyond a reasonable doubt that the error was harmless.
An error in a penalty-phase jury instruction is subject to harmless-error review. Ex parte Broadnax,825 So.2d 233, 236 (Ala. 2001). However, "[t]he harmless error rule is to be applied with extreme caution in capital cases." Ex parteWhisenhant, 482 So.2d 1247, 1249 (Ala. 1984). To find the error in this capital case harmless, we must be able to state "beyond a reasonable doubt" that a properly instructed *Page 1154 
jury would nevertheless have recommended a sentence of death. 482 So.2d at 1248. After reviewing the evidence presented of the aggravating circumstances and the mitigating circumstances, we cannot say with the necessary certainty that the error did not affect the jury's recommendation.
Stephens's defense counsel presented significant mitigating evidence during the sentencing phase of trial. Catherine Lee Boyer, a forensic psychologist, testified that Stephens has a verbal IQ of 73 and a performance IQ of 86, and a combined full-scale IQ score of 77. She described this score as "borderline." Boyer also testified that the circumstances of the murders were consistent with rage or "extreme emotional state," as opposed to a calculated or planned killing, and that Stephens's behavior in the hours following the murder indicated remorse. Stephens's mother testified that Stephens loved his children, including Nicholas, that he had been a caring and responsible father, and that he "could not have been in his `right mind'" when he committed the murders.
Despite evidence of the heinous, atrocious, and cruel nature of the offense, and despite Stephens's 1992 attack on Annie, two jurors voted for a sentence of life imprisonment without parole. The jury might have voted for the death penalty if it had been instructed on only the two valid statutory aggravating circumstances. However, we are unable to conclude, beyond a reasonable doubt, that it would have done so.
A recommendation of death must be based on a vote of at least 10 jurors. § 13A-5-49(f), Ala. Code 1975. In this case, a change in only one juror's vote would have prevented the jury from recommending a death sentence. At that point, one of several things might have happened — the trial court might have instructed the jury to deliberate further, resulting in a vote for either life imprisonment or death, or the court might have declared a mistrial and empaneled a new sentencing jury. § 13A-5-46(g), Ala. Code 1975. This uncertainty requires us to reverse Stephens's sentence and remand the case for resentencing.
 III. Conclusion
The record shows that the State, defense counsel, and the trial court worked carefully to try to resolve a difficult problem in a tragic case. We commend the careful and thorough approach taken by the trial court. Nevertheless, we hold that the decision not to hold a new sentencing hearing was error.
Insofar as the Court of Criminal Appeals held that the giving of the incorrect jury instruction was not error or that, if it was error, it was harmless, its judgment is reversed and the case is remanded to that court. The Court of Criminal Appeals is instructed, in turn, to remand the case to the trial court for resentencing. As stated above, see note 1,supra, Stephens did not challenge his conviction in his petition for certiorari review; it thus remains intact.
REVERSED AND REMANDED.
SEE, LYONS, HARWOOD, WOODALL, and SMITH, JJ., concur.
STUART, J., concurs in the result.
BOLIN and PARKER, JJ., dissent.
[1] In his petition for the writ of certiorari, Stephens does not challenge his conviction or his eligibility for the death sentence. As a condition precedent to the possibility of a death sentence, the jury had to find beyond a reasonable doubt that a statutory aggravating circumstance was present. § 13A-5-45(f), Ala. Code 1975. In this case, the State proved two aggravating circumstances: that Stephens had been previously convicted of a violent felony and that the offense was especially heinous, atrocious, or cruel when compared with other capital offenses. §§ 13A-5-49(2) and 13A-5-49(8), Ala. Code 1975. Finally, Stephens does not allege that his sentence violates the Alabama Constitution or the United States Constitution.
[2] This circumstance was added as a statutory aggravating circumstance by an amendment to § 13A-5-49, adding subsection (9), effective September 1, 1999, Act No.
99-403, Ala. Acts 1999.
[3] Before the presentation of evidence at the sentencing hearing, the trial court identified the three aggravating circumstances the State had pleaded. Then, with respect to the aggravating circumstance involving the death of two or more persons by a single act, it said, "Now, y'all have already really decided that one by the verdict that you have previously returned." The jury was given interrogatories to indicate the presence or absence of the other two aggravating circumstances, but not the multiple-deaths-by-a-single-act aggravating circumstance.
[4] In fact, after his successful appeal, Kyzer was retried and convicted of the lesser-included offenses of first-degree and second-degree murder. Kyzer v. State,484 So.2d 1202 (Ala.Crim.App. 1986).
[5] Edwards's offense occurred in 1984. The Court of Criminal Appeals decided his case in 1987.
[6] In Kyzer, the Court noted that "[a] literal and technical reading of the statute" would preclude the consideration of an aggravating circumstance other than those identified by statute. 399 So.2d at 337. This would mean that some defendants, such as Kyzer, could be convicted of capital murder without being eligible for a death sentence. This Court rejected that conclusion as "completely illogical."Id. It is, however, the Court's responsibility to give effect to the plain meaning of a statute, not to substitute its own judgment as to what is logical or illogical. Munnerlynv. Alabama Dep't of Corr., 946 So.2d 436, 438
(Ala. 2006). *Page 1155