On Remand from the Alabama Supreme Court

WINDOM, Judge.
In 1998, Jerry Jerome Smith was convicted of capital murder for killing Willie Flournoy, Theresa Helms, and David Bennett by one act or pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975. The jury recommended, by a vote of 11-1, that Smith be sentenced to death. In accordance with the jury’s recommendation, the circuit court sentenced Smith to death.
On appeal, this Court affirmed Smith’s capital-murder conviction, but remanded the cause for the circuit court to correct its sentencing order. See Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000), After remanding the cause a second time for the circuit court to correct its sentencing order, this Court affirmed Smith’s death sentence. See Smith v. State, 213 So.3d 108, *329 209 (Ala.Crim.App.2000) (opinion on return to second remand). Thereafter, the Alabama Supreme Court reversed Smith’s death sentence and ordered a new penalty-phase hearing. See Ex parte Smith 213 So.3d 214 (Ala.2003).
After a second penalty-phase hearing, the jury recommended by a vote of 10-2 that Smith be sentenced to death. The circuit court followed the jury’s recommendation and again sentenced Smith to death. On return to remand, this Court “concluded that Smith is mentally retarded and, therefore, ... ineligible for the death penalty and directed the trial court to set aside Smith’s death sentence and to sentence him to life imprisonment without the possibility of parole.” Ex parte Smith 213 So.3d 313, 314 (Ala.2010) (citing Smith v. State, 213 So.3d 226, 228 (Ala.Crim.App.2006) (opinion on return to third remand)). The Alabama Supreme Court reversed this Court’s judgment and remanded the cause for the circuit court to conduct an Atkins[1] hearing to determine whether Smith is mentally retarded and to make specific findings of fact pursuant to Ex parte Perkins, 851 So.2d 453 (Ala.2002). Smith v. State, 213 So.3d 239, 254 (Ala.2007). After conducting the Atkins hearing, the circuit court concluded that Smith is not mentally retarded. This Court affirmed the circuit court’s determination, and the Alabama Supreme Court granted certiorari review.
On October 22, 2010, the Alabama Supreme Court again reversed Smith’s sentence of death and remanded the cause for the circuit court to conduct a new penalty-phase proceeding before a jury. Ex parte Smith 213 So.3d 313, 326 (Ala.2010). Specifically, after detailing why the circuit court correctly determined that Smith is not mentally retarded, the Alabama Supreme Court held that improper, prejudicial contact between the victim’s mother and the jury venire entitled Smith to a new penalty phase-proceeding. Id. at 320-26.
In accordance with the Alabama Supreme Court’s opinion in Ex parte Smith 213 So.3d at 326, this cause is remanded to the circuit court with instructions for that court to conduct a third penalty-phase hearing. On remand, the circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 180 days from the date of this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
WELCH, P.J., and KELLUM, J., concur.

On Return to Fifth Remand

WINDOM, Presiding Judge.
Jerry Jerome Smith appeals his sentence of death that resulted from the third penalty-phase proceeding of his capital-murder trial. In 1998, Smith was convicted of capital murder for killing Willie Flournoy, Theresa Helms, and David Bennett by one act or pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975. At the conclusion of the third penalty-phase proceeding, the jury recommended, by a vote of 12-0, that Smith be sentenced to death. In accordance with the jury’s recommendation, the circuit court sentenced Smith to death.
*330 The facts of the Smith’s offense are stated in detail in Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000), and will not be repeated here except as necessary for an understanding of the issue before this Court. Smith, who was a drug dealer, went to Flournoy’s residence to collect $1,500, which Flournoy owed him for crack cocaine. When Flournoy told Smith that he did not have the money, Smith shot and killed him with a sawed-off .22 caliber rifle. Smith then shot and killed Helms and Bennett, who were also at Flournoy’s residence. The jury convicted Smith of capital murder for intentionally killing two or more people pursuant to one act or pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975. Smith was sentenced to death; he appealed.
“On appeal, this Court affirmed Smith’s capital-murder conviction, but remanded the cause for the circuit court to correct its sentencing order. See Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000). After remanding the cause a second time for the circuit court to correct its sentencing order, this Court affirmed Smith’s death sentence. See Smith v. State, 213 So.3d 108, 209 (Ala.Crim.App.2000) (opinion on return to second remand). Thereafter, the Alabama Supreme Court reversed Smith’s death sentence and ordered a new penalty-phase hearing. See Ex parte Smith, 213 So.3d 214 (Ala.2003).
“After a second penalty-phase hearing, the jury recommended by a vote of 10-2 that Smith be sentenced to death. The circuit court followed the jury’s recommendation and again sentenced Smith to death. On return to remand, this Court ‘concluded that Smith is mentally retarded and, therefore, ... ineligible for the death penalty and directed the trial court to set aside Smith’s death sentence and to sentence him to life imprisonment without the possibility of parole.’ Ex parte Smith, 213 So.3d 313, 314 (Ala.2010) (citing Smith v. State, 213 So.3d 226, 228 (Ala.Crim.App.2003) (opinion on return to third remand)). The Alabama Supreme Court reversed this Court’s judgment and remanded the cause for the circuit court to conduct [a hearing pursuant to Atkins v. Virginia, 536 U.S. 304 (2002),] to determine whether Smith is mentally retarded and to make specific findings of' fact pursuant to Ex parte Perkins, 851 So.2d 453 (Ala.2002). Smith v. State, 213 So.3d 239, 254 (Ala.2007). After conducting the Atkins hearing, the circuit court concluded that Smith is not mentally retarded. This Court affirmed the circuit court’s determination, and the Alabama Supreme Court granted certiorari review.
“On October 22, 2010, the Alabama Supreme Court again reversed Smith’s sentence of death and remanded the cause for the circuit court to conduct a new penalty-phase proceeding before a jury. Ex parte Smith, 213 So.3d 313, 326 (Ala.2010). Specifically, after detailing why the circuit court correctly determined that Smith is not mentally retarded, the Alabama Supreme Court held that improper, prejudicial contact between the victim’s mother and the jury venire entitled Smith to a new penalty-phase proceeding. Id. at 320-26.”
Smith v. State, 213 So.3d 327, 328-29 (Ala.Crim.App.2011). In accordance with the Alabama Supreme Court’s opinion in Ex *331 parte Smith, 218 So.3d 313, 326 (Ala.2010), this Court remanded the cause to the “the circuit court with instructions for that court to conduct a third penalty-phase hearing.” Smith, 213 So.3d at 329.
On January 23, 2012, the circuit court began Smith’s third penalty-phase proceeding before a jury. At the conclusion of the presentation of evidence, the circuit court instructed the jury on the law. During its jury charge regarding aggravating circumstances, the circuit court instructed the jury that it could consider four aggravating circumstances. Specifically, the circuit court instructed the jury that it could consider the following aggravating circumstances: 1) “[t]he defendant was previously convicted of another capital offense or a felony involving the use or threat of violence to the person,” § 13A-5-49(2), Ala. Code 1975; 2) “[t]he defendant knowingly created a great risk of death to many persons,” § 13A-5-49(3), Ala.Code 1975; 3) “[t]he capital offense was especially heinous, atrocious, or cruel compared to other capital offenses,” § 13A-5-49(8), Ala.Code 1975; and 4) “the defendant intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct.” (R. 948-49.) See § 13A-5-49(9), Ala.Code 1975. At the conclusion of the circuit court’s instructions, Smith raised the following objection:
“Judge, I do not believe the aggravating circumstance of causing the death of more than one person by a common plan or scheme or course of conduct—I don’t even believe that aggravating circumstance even applied at the time that these crimes were committed. I don’t even think that aggravating circumstance was Alabama law at that time.”
(R. 951-52.)
After the circuit court charged the jury, it returned a unanimous recommendation that Smith be sentenced to death. On April 18, 2012, the circuit court conducted a judicial sentencing hearing. At the conclusion of the sentencing hearing, the circuit court accepted the jury’s recommendation and sentenced Smith to death.
On appeal, Smith argues, and the State concedes, that his sentence of death must be reversed and the cause be remanded for a fourth penalty-phase proceeding because the circuit court improperly instructed the jury that it could consider an aggravating circumstance that was inapplicable. Specifically, the parties agree that the circuit court incorrectly instructed the jury that it could consider the aggravating circumstance that Smith “intentionally caused the death of two or more persons by one act or pursuant to one scheme or course of conduct,” § 13A-5-49(9), Ala.Code 1975, because that aggravating circumstance did not exist when Smith committed his capital offense. According to the parties, by allowing the jury to consider an aggravating circumstance that did not exist at the time Smith committed his offense, the circuit court violated his statutory right to an advisory verdict by a jury. This Court agrees.
Smith committed the capital offense for which he has been sentenced to death on October 19, 1996. At that point, the murder of “two or more persons by one act or pursuant to one scheme or course of conduct,” § 13A-5-49(9), Ala.Code 1975, was not an aggravating circumstance. Rather, the amendment to § 13A-5-49, Ala.Code 1975, to include the murder of “two or more persons by one act or pursuant to one scheme or course of conduct,” § 13A-5-49(9), Ala.Code 1975, as an aggravating circumstance became effective on September 1,1999, almost three years after Smith committed his offense.
*332 As the State explains in its brief, “[i]n Ex 'parte Stephens, 982 So.2d 1148 (Ala.2006), the Supreme Court of Alabama was presented with the same issue that warrants the reversal of Smith’s death sentence.” (State’s brief, at 12.) In Ex parte Stephens, the circuit court instructed the jury that it could consider three aggravating circumstances, one of which was “that Stephens ‘intentionally caused the death of two or more persons by one act.’” Ex parte Stephens, 982 So.2d at 1150. Like Smith, however, Stephens had committed his capital offense before § 13A-5-49, Ala. Code 1975, was amended to include “intentionally causing] the death of two or more persons by one act” as an aggravating circumstance. Id. at 1150. The Alabama Supreme Court then held that “[i]t was error for the trial court to instruct Stephens’s jury to consider as a statutory aggravating circumstance a circumstance that was not listed in the statute at the time of the offense.” Id. at 1153, Similarly, the circuit court in this case erroneously instructed the jury that it could consider an aggravating circumstance that did not exist when Smith committed his offense.
Having determined that it was error to instruct the jury that it could consider an inapplicable aggravating circumstance, however, does not end this Court’s analysis. Rather, as the Alabama Supreme Court explained in Stephens:
“An error in a penalty-phase jury instruction is subject to harmless-error review. Ex parte Broadnax, 825 So.2d 233, 236 (Ala.2001). However, ‘[t]he harmless error rule is to be applied with extreme caution in capital cases.’ Ex parte Whisenhant, 482 So.2d 1247, 1249 (Ala.1984). To find the error in this capital case harmless, we must be able to state ‘beyond a reasonable doubt’ that a properly instructed jury would nevertheless have recommended a sentence of death. 482 So.2d at 1248.”
Ex parte Stephens, 982 So.2d at 1153-54.
After explaining that the erroneous penalty-phase jury instructions are subject to harmless-error review, the Alabama Supreme Court held:
“After reviewing the evidence presented of the aggravating circumstances and the mitigating circumstances, we cannot say with the necessary certainty that the error did not affect the jury’s recommendation.
“Stephens’s defense counsel presented significant mitigating evidence during the sentencing phase of trial. Catherine Lee Boyer, a forensic psychologist, testified that Stephens has a verbal IQ of 73 and a performance IQ of 86, and a combined full-scale IQ score of 77. She described this score as ‘borderline.’ Boyer also testified that the circumstances of the murders were consistent with rage or ‘extreme emotional state,’ as opposed to a calculated or planned killing, and that Stephens’s behavior in the hours following the murder indicated remorse. Stephens’s mother testified that Stephens loved his children, including Nicholas, that he had been a caring and responsible father, and that he ‘could not have been in his “right mind” ’ when he committed the murders.
“Despite evidence of the heinous, atrocious, and cruel nature of the offense, and despite Stephens’s 1992 attack on Annie, two jurors voted for a sentence of life imprisonment without parole. The jury might have voted for the death penalty if it had been instructed on only the two valid statutory aggravating circumstances. However, we are unable to conclude, beyond a reasonable doubt, that it would have done so.
“A recommendation of death must be based on a vote of at least 10 jurors. *333 § 13A-5-49(f), Ala.Code 1975. In this case, a change in only one juror’s vote would have prevented the jury from recommending a death sentence. At that point, one of several things might have happened—the trial court might have instructed the jury to deliberate further, resulting in a vote for either life imprisonment or death, or the court might have declared a mistrial and empaneled a new sentencing jury. § 13A-5-46(g), Ala.Code 1975. This uncertainty requires us to reverse Stephens’s sentence and remand the case for resentencing.”
Ex parte Stephens, 982 So.2d at 1154.
Here, as in Ex parte Stephens, the circuit court’s erroneous jury instruction regarding an inapplicable aggravating circumstance cannot be deemed harmless. See Rule 45, Ala. R.App. P. Smith’s “defense counsel presented significant mitigating evidence during the sentencing phase of trial,” Ex parte Stephens, 982 So.2d at 1154, including evidence of Smith’s mental deficiencies, of his dysfunctional upbringing, of his drug and alcohol abuse, and of the sexual abuse he suffered. In its sentencing order, the circuit court found that Smith’s counsel presented mitigating evidence indicating the following: 1) Smith has the learning capacity of a third grader, was in special-education classes all his life, and quit school in the eighth grade; 2) Smith has a low IQ, has a low frustration tolerance, and has poor impulse control; 3) Smith cannot read or write; 4) Smith has a history of excessive alcohol and drug abuse, and first consumed alcohol at the age of eight; 5) Smith was on drugs and alcohol when he committed his capital offense and did not resist arrest; 6) Smith grew up in a dysfunctional home with an alcoholic mother; 7) Smith did not develop a relationship with his natural father; 8) Smith’s mother, father, and all of his siblings had criminal histories; 9) Smith witnessed his sister being raped; and 10) Smith was sexually abused by his cousin. (C. 480-82.) See Ex parte Stephens, 982 So.2d at 1154 (placing great significance on mitigating evidence relating to Stephens’s mental deficiencies in finding that the erroneous jury instruction was not harmless).
Further, although the jury was properly instructed on three aggravating circumstances, 'the circuit court, like the court in Stephens, found only two aggravating circumstances. See Ex parte Stephens, 982 So.2d at 1151 (recognizing that “only two of those aggravating circumstances were actually available as statutory aggravating circumstances in this case”). Specifically, the circuit court found Smith “knowingly created a great risk of death to many persons,” see § 13A-5-19(3), Ala.Code 1975; and that he “was previously convicted of ... a felony involving the use or threat of violence to the person,” see § 13A-5-19(2), Ala.Code 1975.
After reviewing the evidence presented in mitigation and the aggravating circumstances, this Court cannot “state ‘beyond a reasonable doubt’ that a properly instructed jury would nevertheless have recommended a sentence of death.” Ex parte Stephens, 982 So.2d at 1153-54. As the State concedes in its brief, “just as in Stephens, the court’s erroneous instruction cannot be deemed harmless because Smith’s counsel presented ... considerable mitigation evidence regarding, among other things, his low intellectual functioning, [dysfunctional upbringing, drug and alcohol abuse, and sexual abuse].” (State’s brief, at 17) (quoting Ex parte Stephens, 982 So.2d at 1154). When Smith’s mitigating evidence is balanced against the aggravating circumstances, this Court “cannot say with the necessary certainty that the error did not affect the jury’s recommen *334 dation.” Ex parte Stephens, 982 So.2d at 1154.
Accordingly, Smith’s sentence of death is reversed, and this cause is remanded to the circuit court with instructions for that court to conduct a fourth jury penalty-phase proceeding. On remand, the circuit court shall take all necessary action to see that the circuit clerk makes due return to this Court at the earliest possible time and within 180 days from the date of this opinion.
REVERSED AND REMANDED.
WELCH, KELLUM, BURKE, and JOINER, JJ., concur.

On Return to Sixth Remand

WINDOM, Presiding Judge.
Jerry Jerome Smith appeals his sentence of death that resulted from the fourth penalty-phase proceeding of his capital-murder trial. In 1998, Smith was convicted of capital murder for killing Willie Flournoy, Theresa Helms, and David Bennett by one act or pursuant to one scheme or-course of conduct. See § 13A-5-40(a)(10), Ala.Code 1975. At the conclusion of the 4th penalty-phase proceeding, the jury recommended, by a vote of 10 to 2, that Smith be sentenced to death. The circuit court accepted the jury’s recommendation and sentenced Smith to death.
The facts of Smith’s offense are stated in detail in Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000), and will not be repeated except as necessary for an understanding of the issue presently before this Court. Briefly, Smith, a drug dealer, went to Flournoy’s residence to collect $1,500, which Flournoy owed Smith for crack cocaine. When Flournoy told Smith that he did not have the money, Smith shot and killed him with a sawed-off .22 caliber rifle. Smith then shot and killed Helms and Bennett, who were also at Flournoy’s residence. The jury convicted Smith of capital murder for intentionally killing two or more people pursuant to one act or pursuant to one scheme or course of conduct, see § 13A-5-40(a)(10), Ala.Code 1975. The circuit court sentenced Smith to death, and he appealed his conviction and sentence.
“On appeal, this Court affirmed Smith’s capital-murder conviction, but remanded the cause for the circuit court to correct its sentencing order. See Smith v. State, 213 So.3d 108 (Ala.Crim.App.2000). After remanding the cause a second time for the circuit court to correct its sentencing order, this Court affirmed Smith’s death sentence. See Smith v. State, 213 So.3d 108, 209 (Ala.Crim.App.2000) (opinion on return to second remand). Thereafter, the Alabama Supreme Court reversed Smith’s death sentence and ordered a new penalty-phase hearing. See Ex parte Smith, 213 So.3d 214 (Ala.2003).
“After a second penalty-phase hearing, the jury recommended by a vote of 10-2 that Smith be sentenced to death. The circuit court followed the jury’s recommendation and again sentenced Smith to death. On return to remand, this Court ‘concluded that Smith is mentally retarded and, therefore, ... ineligible for the death penalty and directed the trial court to set aside Smith’s death sentence and to sentence him to life imprisonment without the possibility of parole.’ Ex parte Smith, 213 So.3d 313, 314 (Ala.2010) (citing Smith v. State, 213 So.3d 226, 228 (Ala.Crim.App.2003) (opinion on return to third remand)). The Alabama Supreme Court reversed *335 this Court’s judgment and remanded the cause for the circuit court to conduct [a hearing pursuant to Atkins v. Virginia, 536 U.S. 304 (2002),] to determine whether Smith is mentally retarded and to make specific findings of fact pursuant to Ex parte Perkins, 851 So.2d 453 (Ala.2002). Smith v. State, 213 So.3d 239, 254 (Ala.2007). After conducting the Atkins hearing, the circuit court concluded that Smith is not mentally retarded. This Court affirmed the circuit court’s determination, and the Alabama Supreme Court granted certiorari review.
“On October 22, 2010, the Alabama Supreme Court again reversed Smith’s sentence of death and remanded the cause for the circuit court to conduct a new penalty-phase proceeding before a jury. Ex parte Smith, 213 So.3d 313, 326 (Ala.2010). Specifically, after detailing why the circuit court correctly determined that Smith is not mentally retarded, the Alabama Supreme Court held that improper, prejudicial contact between the victim’s mother and the jury venire entitled Smith to a new penalty-phase proceeding. Id. at 320-26.”
Smith v. State, 213 So.3d 327, 328-29 (Ala.Crim.App.2011). In accordance with the Alabama Supreme Court’s opinion in Ex parte Smith, 213 So.3d 313, 326 (Ala.2010), this Court remanded the cause to “the circuit court with instructions for that court to conduct a third penalty-phase hearing.” Smith, 213 So.3d at 329.
On January 23, 2012, the circuit court began Smith’s third penalty-phase proceeding before a jury. At the conclusion of the 3rd penalty phase, the jury, by a vote of 12 to 0, recommended that Smith be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Smith to death. On return to remand, this Court determined that the circuit court erroneously allowed the jury to consider an aggravating circumstance that did not exist at the time of Smith’s offense. Smith v. State, 213 So.3d 327, 329 (Ala.Crim.App.2011). Thus, this Court reversed Smith’s sentence of death and remanded the cause with instructions for the circuit court to conduct a fourth penalty-phase proceeding. Id. at 334.
On September 8, 2014, the circuit court began Smith’s fourth penalty phase. Before beginning the jury-selection process, the circuit court completely excluded the public and the press from its general qualification of the veniremembers. Smith objected to the circuit court’s excluding the public from the proceeding. In response to Smith’s objection, the circuit court stated:
“I don’t see that it has any bearing on the general qualifications. You have counsel and the defendant is present for qualifications. It’s a general rule. And the general public is not in the general qualification or voir dire. But your objection is noted.”
(R. on 6th remand, 10.) After conducting voir dire to determine the general qualifications of the veniremembers, the circuit court informed the parties that the public would be excluded from the remainder of the jury-selection process. The circuit court explained that it did not want any improper contact between veniremembers and the public. At that point, defense counsel objected to the public being excluded from the proceedings. Counsel informed the court that Smith’s family, a member of the media, and one of Smith’s *336 appellate attorneys, “an attorney from the Equal Justice Initiative,” were there to observe the proceedings. (R. on 6th remand 43.) The circuit court ruled that “[e]veryone is excluded during voir dire until we get ready to try the case.” Id. The circuit court noted “that the physical capacity of [its] courtroom [was] inadequate to have [the public and the venire] in the courtroom” and that it was excluding the public from voir dire “to minimize any contact with any juror during this process ” (Id., at 44-45.)
After the parties selected a jury, the circuit court allowed the public to enter the courtroom to observe the remainder of the penalty-phase proceeding. At the conclusion of the 4th penalty-phase proceeding, the jury recommended, by a vote of 10 to 2, that Smith be sentenced to death. The circuit court followed the jury’s recommendation and sentenced Smith to death.
On appeal, Smith argues, among other things, that the circuit court violated his right to a public trial under the Sixth Amendment to the Constitution of the United States. According to Smith, the circuit court infringed upon his right to a public trial because it lacked sufficient grounds to completely exclude the public from the voir-dire proceedings and because it failed to consider alternatives to closing the proceedings. He further argues that the circuit court’s infringement upon his right to a public trial constituted a structural error requiring reversal without any showing of prejudice.
The Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right to a public ... trial.” Likewise, Article I, § 6, of the Alabama Constitution of 1901, guarantees that “in all criminal prosecutions, the accused has a right to ... a speedy, public trial.” The Alabama Supreme Court has recognized that “[a] public trial ensures that the judge, prosecutor, and jury carry out their duties responsibly, encourages witnesses to come forward, and discourages perjury.” Ex parte Easterwood, 980 So.2d 367, 372 (Ala.2007) (citing Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)).
Although the right to an open and public trial serves important interests, that right is not absolute. See Ex parte Easterwood, 980 So.2d at 372; Waller, 467 U.S. at 45. In Waller, the Supreme Court of the United States explained: “[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant’s right to a fair trial or the government’s interest in inhibiting disclosure of sensitive information.” 467 U.S. at 45. Instances that require the complete closure of part or all of a trial “will be rare, however, and the balance of interests must be struck with special care.” Waller, 467 U.S. at 45. The Court then explained that a trial court may completely exclude the public from part of a criminal trial only if:
“ ‘[1] [T]he party seeking to close the hearing ... advance[s] an overriding interest that is likely to be prejudiced, [2] the closure [is] no broader than necessary to protect that interest, [3] the trial court ... considers] reasonable alternatives to closing the proceeding, and [4] [the trial court] make[s] findings adequate to support the closure.’ ”[1]
*337 Ex parte Easterwood, 980 So.2d at 373 (quoting Waller, 467 U.S. at 48).
In Presley v. Georgia, 558 U.S. 209, 213, 130 S.Ct. 721, 175 L.Ed.2d 675 (2010), the Supreme Court of the United States held that “the Sixth Amendment right to a public trial extends to the voir dire of prospective jurors” and that, before the public may be excluded from voir dire, a trial court must first comply with the test established in Waller. The Court explained that, before a trial court may exclude the public from voir dire, it must have an overriding interest that will be served by closing the proceedings. Presley, 558 U.S. at 214. Further, a trial court must consider alternatives to closing the proceedings from the public. Presley, 558 U.S. at 215. In fact, “trial courts are required to consider alternatives to closure even when they are not offered by the parties.” Presley, 558 U.S. at 214. Thus, when deciding whether to exclude the public from voir dire because of the size of the courtroom or concerns about improper communication, a trial court must consider alternatives to total closure such as “reserving one or more rows for the public; dividing the jury venire panel to reduce courtroom congestion; or instructing prospective jurors not to engage or interact with audience members.” Presley, 558 U.S. at 215. This is because “[tjrial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials.” Presley, 558 U.S. at 215.
Here, the circuit court totally closed jury qualification and voir dire to the public. Although the circuit court noted generic concerns regarding the small size of its courtroom and the need to prevent communication between venire-members and the public, the circuit court did not point to any specific harm or threat that needed to be addressed. Rejecting the notion that a similar need was sufficient to exclude the public from voir dire, the Supreme Court explained:
“The generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident, is inherent whenever members of the public are present during the selection of jurors. If broad concerns of this sort were sufficient to override a defendant’s constitutional right to a public trial, a court could exclude the public from jury selection almost as a matter of course. [Allowing trial courts to exclude the public from voir dire to prevent improper contact between the public and the jury would] permit[ ] the closure of voir dire in every criminal case conducted in this courtroom whenever the trial judge decides, for whatever reáson, that he or she would prefer to fill the courtroom with potential jurors rather than spectators.’ [Presley v. State, 285 Ga. 270, 674 S.E.2d 909, 913 (2009) ] (opinion of Sears, C.J.).
“There are no doubt circumstances where a judge could conclude that threats of improper communications with jurors or safety concerns are concrete enough to warrant closing voir dire. But in those cases, the particular interest, and threat to that interest, must ‘be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.’ Press-Enterprise [Co. v. Superior Court of Cal., Riverside Cty., 464 U.S. 501, 510 (1984)]; see also Press-Enterprise Co. v. Superior Court of Cal., County of Riverside, 478 U.S. 1, 15 (1986) (‘The First Amendment right of access cannot be overcome by the conclusory assertion *338 that publicity might deprive the defendant of [the right to a fair trial]’).”
Presley, 558 U.S. at 215-16.
The circuit court did not identify a particular risk or threat. Rather, it relied on the “generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident,” 558 U.S. at 215-16, to totally exclude the public from voir dire. The circuit court’s reliance on that “generic risk,” is insufficient to justify totally excluding the public from Smith’s voir dire proceedings.
More importantly, it does not appear that the circuit court considered any alternatives to total closure of the voir dire proceedings. Before voir dire, the circuit court mentioned another courtroom in the building that was available to hold any spectators until a jury was chosen and, at a later time, defense counsel argued that that courtroom was larger and would have been a sufficient alternative to total closure of the proceedings. (R. on 6th remand 44, 511.) However, it does not appear that the circuit court considered conducting voir dire in the larger courtroom. Further, there is no indication in the record that the circuit court was unable to provide a limited area for the public and to conduct voir dire in smaller panels of veniremembers. Further, this Court notes that the circuit court did not exclude the public from Smith’s third penalty-phase proceedings. Instead, during those proceedings, the circuit court used members of the circuit clerk’s office to prevent any improper contact between the public and the veniremembers.
Because the circuit court did not properly consider and use available alternatives to total exclusion of the public from voir dire, the circuit court violated Smith’s Sixth Amendment right to a public trial.[2] Presley, 558 U.S. at 215. As a result, Smith’s fourth penalty-phase proceeding must be reversed. Ex parte Easterwood, 980 So.2d at 874 (noting that a violation of a defendant’s right to a public trial is a structural error that does not require a showing of prejudice); Waller, 467 U.S. at 49-50; Ex parte McCombs, 24 So.3d 1175, 1178 (Ala.Crim.App.2009); P.M.M. v. State, 762 So.2d 384, 388 (Ala.Crim.App. 1999). Consequently, this Court reverses Smith’s sentence of death, and this cause is remanded to the circuit court with instructions for that court to conduct a fifth jury penalty-phase proceeding.
REVERSED AND REMANDED.
WELCH, BURKE, and JOINER, JJ., concur. KELLUM, J., concurs in part and dissents in part, with opinion.

. Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

. The test for a partial closure is not as stringent. For a partial closure, the moving party need advance only a "substantial reason” for the closure, as opposed to the overriding interest necessary for a total closure. Easter-wood, 980 So.2d at 375.

. The State concedes that the record is insufficient to establish that the circuit court complied with the Waller test before excluding the public from voir dire, but asks this Court to remand this cause to give the circuit court the opportunity to make specific findings of fact in compliance with Waller. Although an appellate court may, in some circumstances, remand a cause to the circuit court to supplement the record with specific findings in compliance with Waller, such a remand is not necessary in this case. Rather, the availability of alternatives to total closure of voir dire is apparent from the record.