[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 332 
Prior to our decision in Beck v. State, 396 So.2d 645 (Ala. 1980), we granted certiorari to review the judgment of the Court of Criminal Appeals in affirming the death sentence of the petitioner, Dudley Wayne Kyzer. We now review Kyzer's conviction in light of Beck and the decision of the Supreme Court of the United States in Godfrey v. Georgia, 446 U.S. 420,100 S.Ct. 1759, 64 L.Ed.2d 398 (1980), which was rendered after we granted the writ in this case.
Kyzer was tried and convicted under Alabama's Death Penalty Statute, Code 1975, § 13-11-2 (a)(10), for first degree murder "wherein two or more human beings are intentionally killed by the defendant by one or a series of acts." The facts surrounding the petitioner's conviction are set forth in detail in the Court of Criminal Appeals' opinion and need not be restated here. See, Kyzer v. State, 399 So.2d 317 (Ala.Cr.App. 1979). On the basis *Page 333 
of those facts, a jury found the petitioner guilty of "First Degree Murder with aggravated circumstances as charged in the indictment." The trial court subsequently conducted a post conviction hearing and, after considering the existence of any aggravating or mitigating circumstances, duly sentenced the petitioner to death. On appeal, the Court of Criminal Appeals affirmed.
As we opined in our decision in Beck v. State, a majority of the Supreme Court of the United States has determined that a death sentence may not be imposed after a jury verdict of guilt of a capital offense when the jury was not permitted to consider a verdict of guilt of a lesser included offense, when the evidence would have supported such a verdict. Beck v.Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Having carefully examined the record in the instant case, we conclude that there was an evidentiary basis for lesser included offense instructions in Kyzer's case. We, therefore, hold that the petitioner's cause is due to be reversed and remanded for a new trial to be conducted in conformity with the procedures we established in Beck, and as may otherwise be required by law or court rule promulgated by this Court. Because of the particular facts of this case, we determine that another pertinent issue needs to be addressed: Will the death penalty be an available option to the State if Kyzer is retried? We hold that it would.
On original submission of this case, petitioner argued that the Court of Criminal Appeals erred in affirming his sentence of death on several grounds; however, for purposes of the instant review we will address only one of those arguments,viz., whether the Court of Criminal Appeals erred in sustaining the trial court's post conviction finding that the "capital felony was especially heinous, atrocious or cruel," an aggravating circumstance found in Code 1975, § 13-11-6 (8).
The court did err, because the aggravating circumstance found by the trial judge cannot be supported under the rule of law announced in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759,64 L.Ed.2d 398 (1980). It is now abundantly clear that the first degree murder of two or more victims is not, by definition, especially heinous, atrocious or cruel. In Godfrey, the court examined the operative scope of an aggravating circumstance enumerated in Georgia's Death Penalty Statute which is quite similar to Code 1975, § 13-11-6 (8). Georgia, like Alabama, has adopted a sentencing procedure in capital cases which conditions the imposition of a death sentence on a post conviction finding of one or more aggravating circumstances. The particular aggravating circumstance scrutinized in Godfrey is set forth in Georgia Code Ann. § 27.2534.1 (b)(7) and reads as follows:
 The offense of murder, rape, armed robbery, or kidnapping was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim.
In Godfrey v. State, 243 Ga. 302, 253 S.E.2d 710 (1979), the Georgia Supreme Court affirmed the trial court's finding of this aggravating circumstance under facts strikingly similar to those in the instant case. The defendant, Robert Franklin Godfrey, rebuffed in his attempts at reconciliation with his estranged wife, went to the dwelling of his mother-in-law and murdered his mother-in-law and wife by shooting them with a shotgun. Under those facts, the jury found the offense to be "outrageously or wantonly vile, horrible or inhuman." In the present case, on the basis of similar facts, the offense was found to be "especially heinous, atrocious or cruel."
In reviewing Godfrey, the United States Supreme Court rejected the lower court's construction and application of § (b)(7) and reasoned as follows:
 In the case before us, the Georgia Supreme Court has affirmed a sentence of death based upon no more than a finding that the offense was "outrageously or wantonly vile, horrible and inhuman" There is nothing in these few words, standing alone, that implies any inherent *Page 334 
restraint on the arbitrary and capricious infliction of the death sentence. A person of ordinary sensibility could fairly characterize almost every murder as "outrageously or wantonly vile, horrible and inhuman." Such a view may, in fact, have been one to which the members of the jury in this case subscribed. If so, their preconceptions were not dispelled by the trial judge's sentencing instructions. These gave the jury no guidance concerning the meaning of any of § (b)(7)'s terms. In fact, the jury's interpretation of § (b)(7) can only be the subject of sheer speculation.
100 S.Ct. at 1765. The Court determined that the language of § (b)(7) was intended to encompass only torturous homicides involving a serious physical abuse of the victim before death. The Court, therefore, held that the Georgia Supreme Court had adopted an overbroad and vague construction of the Georgia statute. At 446 U.S. 428-429, 100 S.Ct. 1765, the Court noted that to hold otherwise would permit the language of § (b)(7) to "become a `catch all' for cases which do not fit within any other statutory aggravating circumstance."
In applying the above reasoning to the present case, we are persuaded that, like the language of § (b)(7), there is nothing in the words "especially heinous, atrocious or cruel" which implies any inherent restraint on the arbitrary and capricious imposition of the death penalty. The homicides committed by the petitioner in the instant case were certainly atrocious in the sense that three innocent victims were murdered; however, in light of Godfrey, the question must be raised: Were the homicides materially more atrocious than any other intentional homicide? Applying the reasoning in Godfrey, we hold that they were not. The aggravating circumstance listed in § 13-11-6 (8) was intended to apply to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim. See,State v. Dixon, 283 So.2d 1 (Fla. 1973).
Since § 13-11-6 (8) was the only aggravating circumstance found by the trial court, petitioner's sentence of death cannot stand. The facts of this case conclusively show that the petitioner was convicted of an aggravated offense for which the legislature failed to provide a corresponding aggravating circumstance; therefore, no other aggravating circumstance could possibly apply, because petitioner was convicted of murder in the first degree wherein three victims were killed. Code 1975, § 13-11-2 (a)(10). The murders were not especially heinous, atrocious or cruel under the Godfrey rule. The evidence did not show that the murders were connected with a robbery, burglary or other felony, nor does the evidence show they were committed for pecuniary gain. The evidence does not show that the petitioner had any prior felony convictions.
This case presents in purest form an anomaly in Alabama's Death Penalty Statute. The legislature, in delineating the fourteen offenses for which the death penalty could be imposed, included the offense for which Kyzer was charged and convicted,viz, "Murder in the first degree wherein two or more human beings are intentionally killed by the defendant by one or a series of acts," [§ 13-11-2 (a)(10)], but failed to provide a corresponding "aggravating circumstance" in § 13-11-6.
A comparison of § 13-11-2 (a) and § 13-11-6 shows that there is a corresponding aggravating circumstance for most, but not all, of the aggravated offenses [e.g., § 13-11-6 (4) corresponds with §§ 13-11-2 (a)(1) through 13-11-2 (a)(4); § 13-11-6 (1) corresponds with § 13-11-2 (a)(6); § 13-11-6 (6) corresponds with § 13-11-2 (a)(7); § 13-11-6 (2) corresponds with § 13-11-2 (a)(13); § 13-11-6 (7) corresponds with § 13-11-2 (a)(14)].
 The legislature specifically provided that: In all cases where no aggravated circumstances enumerated in section 13-11-2 are expressly averred in the indictment, the trial shall proceed as now provided by law, except that the death penalty or life imprisonment without parole shall not be given, and the indictment shall include all lesser offenses. *Page 335 
Code 1975, § 13-11-1. Likewise, the legislature provided that:
 If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses. . . .
[Emphasis added.]
Code 1975, § 13-11-2 (a). The legislature used the word "aggravating circumstances" in § 13-11-1. It is clear that the legislature intended for those words to mean the same thing, because § 13-11-1 specifically mentions cases where no "aggravated circumstances enumerated in § 13-11-2 are averred in the indictment," and § 13-11-2 (a) requires the "aggravation" to be averred in the indictment; however, it is not as clear what the legislature intended when it set forth the offenses in § 13-11-2 (a), because it did not specifically delineate between the offense and the "aggravation," or "aggravated circumstances." Because of this, the following question has plagued lawyers and judges alike: What is the offense or "capital felony" and what is the "aggravation" or "aggravated circumstances enumerated in § 13-11-2" under Alabama's death penalty law?
The question has arisen in the context of the indictment[Evans v. State, 361 So.2d 666 (Ala. 1978)], the trial court's instructions to the jury [Clements v. State, 370 So.2d 723
(Ala. 1979)], and now arises in this context where the judge, at the post conviction sentencing hearing, did not have an aggravating circumstance listed in § 13-11-6 to correspond with the "aggravation" averred in the indictment as required by § 13-11-2.
While there are disagreements among judges and lawyers on what constitutes the "offense" and what constitutes the "aggravation," there is no disagreement in court decisions that the gravamen of the capital offense is the "intentional killing." Without an "intentional killing" there could be no death penalty. The decisions of the Supreme Court of the United States are clear on this point. See, Gregg v. Georgia,428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).
In Beck v. State, this Court held that each of the capital crimes specified by the legislature "requires an intentional killing with aggravation, and not some crime other than homicide under aggravated circumstances."
When the statutory scheme is studied closely, it is apparent that the Alabama Legislature intended to make "murder" [§ 13-11-2 (a)(5), (6), (7), (13), and (14)], "murder in the first degree" [§ 13-11-2 (a)(10), (11), and (12)], and intentional killings [§ 13-11-2 (a)(1), (2), (3), (4), (8), and (9)], capital felonies; therefore, the "capital felony" referred to in §§ 13-11-6 (1) through 13-11-6 (8) refers to an intentional killing, not to "kidnapping," "robbery," "rape," etc. [§§ 13-11-2 (a)(1) through 13-11-2 (a)(4)].
If "capital felony" referred to "robbery," for example, § 13-11-6 (4) would read:
 The [robbery] was committed while the defendant was engaged in or was an accomplice in the commission or an attempt to commit . . . robbery. . . .
That is nonsensical. On the other hand, if the words "intentional killing" are substituted for the words "capital felony" in § 13-11-6 (4) above-quoted, the section is completely clear.
It is apparent that the legislature, when it drafted the Death Penalty Act, considered the text of the Model Penal Code as drafted by the American Law Institute. For example, when the legislature used the words "intentionally killed" in § 13-11-2 (a)(1), (2), (3), (4), (8) and (9), it obviously meant those killings which the Model Penal Code defined as "murder":
 (1) Except as provided in Section 210.3 (1)(b), criminal homicide constitutes murder when:
(a) it is committed purposely or knowingly; or
 (b) it is committed recklessly under circumstances manifesting extreme indifference to the value of human life. *Page 336 
Such recklessness and indifference are presumed if the actor is engaged or is an accomplice in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape.
 (2) Murder is a felony of the first degree [but a person convicted of murder may be sentenced to death, as provided in Section 210.6].
Model Penal Code (U.L.A), § 210.2, p. 533 (1974).
Alabama's new Criminal Code, which also follows substantially the Model Penal Code, defines murder in substantially similar language. Code 1975, § 13A-6-2, provides:
(a) A person commits the crime of murder if:
 (1) With intent to cause the death of another person, he causes the death of that person or of another person; or
 (2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person; or
 (3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.
 (b) A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to reassert itself. The burden of injecting the issue of killing under legal provocation is on the defendant, but this does not shift the burden of proof. This subsection does not apply to a prosecution for, or preclude a conviction of, manslaughter or other crime.
 (c) Murder is punishable by imprisonment in the penitentiary for not less than 10 years to life; provided, that the punishment for murder or any offense committed under aggravated circumstances, as provided by article 2 of chapter 5 of this title, is death or life imprisonment without parole, which punishment shall be determined and fixed as provided by article 2 of chapter 5 of this title or any amendments thereto. (Acts 1977, No. 607, § 2005).
As is apparent, Alabama did not follow the format of the Model Penal Code in classifying how persons convicted of murder could be punished. Under § 210.2 (2) of the Model Penal Code "a person convicted of murder may be sentenced to death. . . ." The Model Penal Code suggests a procedure whereby aggravating circumstances are made a part of the sentencing stage instead of the guilt determining state.
The commentary to Code 1975, § 13A-6-1 indicates why the legislature may not have followed the Model Penal Code format. The commentary to § 13A-6-2 states:
Capital Punishment:
 In the original draft no attempt was made to formulate provisions for the imposition of the death penalty for murder because, at that time, the law as to capital punishment was not clear. Furman v. Georgia, 408 U.S. 238 [92 S.Ct. 2726, 33 L.Ed.2d 346] (1972) ("The court holds that the imposition and carrying out of the death penalty in these cases
constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments").
 Subsequently, in 1975, the Alabama Legislature enacted an act providing for a sentence of death or life imprisonment without parole for certain aggravated offenses, e.g., intentional killing
during kidnapping, robbery, rape, night-time *Page 337 
burglary of occupied dwelling, explosions, murder of peace officer on duty, murder for hire, murder of public official, murder by life convict, Act No. 213, H. 212, Acts of Alabama 1975, Regular Session, which statute has been incorporated by reference in § 13A-6-2 (c) and is codified as Article 2 of Chapter 5 of the Criminal Code. See, also, §§ 13A-5-1 and 13A-5-2. (Emphasis added.)
As a policy choice, Alabama classified "murder" as a felony, and an "offense committed under aggravated circumstances" [§13A-6-2 (c)], as a "capital felony." See § 13-11-6. Under the Model Penal Code any person convicted of murder could be punished capitally, but all would not be so punished. Under the format of that model draft, if the sentencing authority wanted to impose a sentence of death, separate proceedings were required and the sentencing authority would weigh the aggravating and mitigating circumstances to determine whether to impose the sentence of death on the particular defendant. Model Penal Code (U.L.A.), § 210.6.
Likewise, Alabama, as a policy choice, did not follow the model format, but elected to have the aggravating circumstances made a part of the offense, rather than a matter to be presented at a sentencing hearing. In doing so, the legislature created some confusion, but it was responding to a very confusing decision in Furman v. Georgia, 408 U.S. 238,92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).
In any event, it is clear that the legislature intended to punish capitally persons convicted of the aggravated offenses set forth in § 13-11-2, unless, of course, at the sentencing hearing the trial judge, after weighing the aggravating and mitigating circumstances, decided to refuse to accept the jury's sentence of death.
In Beck v. State, this Court mandated the guidelines which must be followed before the sentence of death can be imposed under the Death Penalty Act. If these guidelines are followed, the procedure for imposition of the death sentence meets all present procedural safeguards required by the Supreme Court of the United States.
One of the problems which was obviously faced by the trial judge in this case is that the legislature did not include an "aggravating circumstance" in § 13-11-6 to correspond to the offense section, § 13-11-2 (a)(10). The question is then posed: What if the trial judge cannot find the existence of an aggravating circumstance other than the "aggravation" averred in the indictment? Must the trial judge "refuse to accept the death penalty as fixed by the jury?" A literal and technical reading of the statute would answer this inquiry in the affirmative, but to so hold would be completely illogical and would mean the legislature did a completely useless act by creating a capital offense for which the defendant could not ultimately receive the death penalty. Why would the legislature require that "aggravation" be averred in the indictment and authorize the jury to fix the punishment at death, and then not provide a corresponding "aggravating circumstance" for the judge to find, and thereby force the judge at the post conviction hearing to refuse to accept the death penalty fixed by the jury? We can think of no reason why the legislature would intend such a result.
We are aware, of course, that there could be cases where a statutory "aggravating circumstance" other than the one "averred in the indictment" could be present in a particular case, but we hold that the legislature, by requiring the aggravating circumstance to be averred in the indictment, necessarily meant that the trial judge must find thatparticular aggravating circumstance was present in the case. If the trial judge does not find that the aggravating circumstance averred in the indictment is present, there can be no death sentence imposed, although there might be several other statutory aggravating circumstances present.
Code 1975, § 13-11-4, provides:
 Determination of sentence by court; court not bound by punishment fixed by jury. *Page 338 
 Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death. If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which shall at least
include the following:
 (1) One or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death; and
 (2) Any of the mitigating circumstances enumerated in section 13-11-7 which it finds insufficient to outweigh the aggravating circumstances. (Acts 1975, No. 213, § 4.)
What did the legislature intend when it provided in § 13-11-4 that the trial judge must weigh the "aggravating and mitigating circumstances"? Did the legislature intend to limit the trial judge to a consideration only of the "aggravating circumstances enumerated in § 13-11-6"? We think not, although that is a possible interpretation of legislative intent. (See, Jones, J., specially concurring, infra).
The whole purpose of §§ 13-11-4 through 13-11-7 [procedure for sentencing hearing before the judge] is to allow forjudicial review of a sentence of death fixed by the jury. By providing for a sentencing hearing and by requiring the trial judge to find at least one aggravating circumstance, the legislature obviously intended to give to the trial judge authority to review the finding of the jury and the fixation of punishment at death by the jury to check any arbitrary orcapricious exercise of the power of the jury in fixing thepenalty.
If, on review, the trial judge could not "weigh the aggravating . . . circumstance" which was averred in the indictment, and which was a part of the substantive offense, but which aggravating circumstance was not included in § 13-11-6, the sentencing hearing would be a complete and useless endeavor. We cannot assume that the legislature did a useless act. It is apparent that the legislature intended to permit the trial judge to find the same "aggravated circumstances enumerated in § 13-11-2." Code 1975, § 13-11-1. We so hold.
If a defendant is convicted of "murder in the first degree wherein two or more human beings are intentionally killed," and if the jury, after a hearing conducted in accordance with the principles set out in Beck, fixes the penalty at death, the trial judge, if convinced that the "aggravation" averred in the indictment "that two or more human beings were intentionally killed by the defendant by one or a series of acts" outweighs the mitigating circumstances, may impose a sentence of death by setting forth in writing, as required by § 13-11-4, his findings, even though the "aggravating circumstance" is not "enumerated in § 13-11-6." The jury could make the same finding at its sentence hearing mandated by Beck.
The sole purpose of requiring that the trial judge, as the sentencing authority, make a written finding of the aggravating circumstance is to provide for appellate review of the sentence of death.
Applying traditional rules of statutory construction, we are convinced that the legislature intended to punish capitally defendants found guilty of offenses listed in § 13-11-2. InBeck, this Court upheld the constitutionality of the statute and undertook to discuss the procedural safeguards to which a defendant is entitled under United States Supreme Court decisions. If a defendant is convicted of a capital offense, and the trial judge is authorized to find the same "aggravation" which was averred in the indictment and which was proved beyond a reasonable doubt before a jury, *Page 339 
there can be no violation of any of defendant's rights.
Courts are not powerless to write standards and requirements which can be engrafted onto statutes to make the procedures comport with legislative intent and due process of law.
In Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950,49 L.Ed.2d 929 (1976), the Texas legislature had not adopted a list of aggravating circumstances. The Supreme Court, commenting on this fact, stated:
 While Texas has not adopted a list of statutory aggravating circumstances the existence of which can justify the imposition of the death penalty as have Georgia and Florida, its action in narrowing the categories of murders for which a death sentence may ever be imposed serves much the same purpose. See McGautha v. California, 402 U.S. 183, 206 n. 16, 91 S.Ct. 1454, 1466, 28 L.Ed.2d 711 (1971); Model Penal Code § 201.6, Comment 3, pp. 71-72 (Tent. Draft No. 9, 1959). In fact, each of the five classes of murders made capital by the Texas statute is encompassed in Georgia and Florida by one or more of their statutory aggravating circumstances. For example, the Texas statute requires the jury at the guilt-determining stage to consider whether the crime was committed in the course of a particular felony, whether it was committed for hire, or whether the defendant was an inmate of a penal institution at the time of its commission. Cf. Gregg v. Georgia, 428 U.S. at 165-166, n. 9, 96 S.Ct., at 2921 n. 9; Proffitt v. Florida, 428 U.S. [242] at 248-249, n. 6, 96 S.Ct. [2690] at 2965, n. 6 [49 L.Ed.2d 913]. Thus, in essence, the Texas statute requires that the jury find the existence of a statutory aggravating circumstance before the death penalty may be imposed. So far as consideration of aggravating circumstances is concerned, therefore, the principal difference between Texas and the other two states is that the death penalty is an available sentencing option — even potentially — for a smaller class of murders in Texas. Otherwise the statutes are similar. Each requires the sentencing authority to focus on the particularized nature of the crime.
As we have already indicated, the Alabama statute, especially as construed by us in Beck v. State, "requires the sentencing authority to focus on the particularized nature of the crime."Jurek, supra. The crime is particularized by the requirement that "aggravation" be averred and proved beyond a reasonable doubt. To hold that the failure of the legislature to include the particular "aggravation" as an "aggravating circumstance" under § 13-11-6 would fail to carry out legislative intent.
Based on the foregoing, we hold that Kyzer is entitled to a new trial, under procedures as outlined in Beck v. State. If Kyzer is convicted of the capital offense, the jury and the trial judge at the sentencing hearing may find the "aggravation" averred in the indictment as the "aggravating circumstance," even though the "aggravation" is not listed in § 13-11-6 as an "aggravating circumstance." The jury or trial judge, as applicable, will weigh the "aggravation" or "aggravating circumstance" against any mitigating circumstances in determining whether to impose a sentence of death.
REVERSED AND REMANDED WITH DIRECTIONS.
FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
BEATTY, J., concurs in the result.
JONES, J., concurs in the result with opinion, with which TORBERT, C.J., and ADAMS, J., concur.