[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-12208

_____

FILED
U.S. COURT OF
APPEALS
ELEVENTH CIRCUIT
DECEMBER 19, 2011
JOHN LEY

D. C. Docket No. 97-00629-CV-MHT-WC

BILLY JOE MAGWOOD,

Petitioner-Appellee,
Cross-Appellant,

versus

WARDEN,
COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS,
ATTORNEY GENERAL OF ALABAMA,

Respondents-Appellants,
Cross-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 19, 2011)

ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES

Before DUBINA, Chief Judge, TJOFLAT and BLACK, Circuit Judges.

BLACK, Circuit Judge:

Alabama death-row inmate Billy Joe Magwood's 28 U.S.C. § 2254 petition was partially granted by the district court on his claim that his death sentence violated the fair-warning requirement of the Due Process Clause because it was based on *Ex parte Kyzer*, 399 So. 2d 330 (Ala. 1981), which was decided after he committed his offense and was retroactively applied to his case. *Magwood v. Culliver*, 481 F. Supp. 2d 1262, 1287 (M.D. Ala. 2007). The State of Alabama then appealed the district court's grant of relief on the fair-warning issue,[1] asserting the district court erred when it granted relief on Magwood's claim that *Kyzer* deprived him of due process of law because the claim was (1) procedurally defaulted, (2) precluded under 28 U.S.C. § 2244(b), and (3) meritless. We reversed the district court's grant of relief on Magwood's fair-warning claim, holding the claim was successive and governed by 28 U.S.C. § 2244(b)(2).[2]

---

[1] The State may appeal as of right a grant of habeas relief by the district court and a certificate of appealability is not needed. *Arthur v. Haley*, 248 F.3d 1302, 1303 n.1 (11th Cir. 2001).

[2] The district court also granted relief on Magwood's claim his counsel was ineffective during resentencing because he failed to argue the retroactive application of *Kyzer* to Magwood's case was a violation of due process. *Magwood*, 481 F. Supp. 2d at 1295. The State appealed and we reversed the district court's grant of relief on this claim as well. *Magwood v. Culliver*, 555 F.3d 968, 978 (11th Cir. 2009).

2

*Magwood v. Culliver*, 555 F.3d 968, 976 (11th Cir. 2009).  The Supreme Court granted certiorari, reversed our decision that the fair-warning claim was successive, and remanded for further proceedings consistent with its opinion. *Magwood v. Patterson*, __ U.S. __, 130 S. Ct. 2788, 2803 (2010).

In its supplemental briefing on remand, the State again contends the district court erred in granting relief on the fair-warning claim because the claim is (1) procedurally defaulted, and (2) meritless.  Magwood asserts this claim is not procedurally defaulted and that *Kyzer* unforeseeably suggested that Magwood's crime was a death-eligible offense.  Magwood further contends the Alabama Supreme Court has subsequently made clear that *Kyzer*'s dicta, on which Magwood's death sentence was based, was never the law.

This case presents a unique situation.  The Alabama Supreme Court's interpretation of its death penalty statute in *Kyzer*–that the charge averred in the indictment can be used as the aggravating circumstance for a judge to impose the death penalty–provided the required, and only, "aggravating circumstance" for Magwood to receive the death penalty when he was resentenced in 1986.  *See Kyzer*, 399 So. 2d at 337-38.  In 2006, however, the Alabama Supreme Court held the pertinent language in *Kyzer* was both (1) incorrect and *never* the law of Alabama, and (2) dicta.  *Ex parte Stephens*, 982 So. 2d 1148, 1152-53 (Ala. 2006).

3

Magwood is an anomaly on Alabama's death row. According to Magwood's counsel, Magwood is the sole person on Alabama's death row without an aggravating circumstance for his crime, and is the only person on Alabama's death row whose case is affected by *Stephens*.

Based on a clear reading of Alabama law, we conclude that Magwood was not eligible for the death penalty. Magwood is entitled to habeas relief because his death sentence violated the fair-warning requirement of the Due Process Clause[3] as it was based on *Kyzer*, which was an "unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie v. City of Columbia*, 378 U.S. 347, 352, 84 S. Ct. 1697, 1702 (1964).

## I. BACKGROUND

*A. Factual background*

The facts of Magwood's offense are not in dispute. They are set forth in an opinion by the Alabama Court of Criminal Appeals, as follows:

> Thomas Weeks, a Coffee County Deputy Sheriff, testified he was employed as the county jailer on March 1, 1979, under Coffee County Sheriff Neil Grantham. The witness stated he observed [Magwood], whom he recognized as a former jail inmate, sitting in a car parked in

---

[3] Because Magwood is entitled to relief from his death sentence on this claim, we do not decide the State's other issue on appeal–whether the district court erred when it concluded the state court's rejection of Magwood's ineffective assistance of counsel claim was unreasonable. Nor do we decide the multiple resentencing issues that Magwood asserts in his cross-appeal.

Sheriff Grantham's parking space at approximately 6:45 a.m. Shortly before 7:00 a.m., he observed Sheriff Grantham drive up and park his vehicle. He got out of the automobile, walked to some garbage cans and deposited a trash bag, and then walked towards the jail door. [Magwood] got out of his automobile with something in his hand and met Sheriff Grantham at the rear of the car. At that point, Deputy Weeks heard three gunshots and saw Sheriff Grantham fall. The witness then turned back into the jail and obtained a gun. He observed [Magwood] get back into his car and saw that he held a pistol in his hand. He exchanged fire with [Magwood] as he drove away. Deputy Weeks then went over to where Sheriff Grantham lay on the ground and observed that the Sheriff's face was blue and that he appeared not to be breathing, having apparently been hit in the face and neck. Deputy Weeks stated he observed no one else in the area at the time the Sheriff was killed.

*Magwood v. State*, 426 So. 2d 918, 920 (Ala. Crim. App. 1982).

## B.  Procedural background

Magwood murdered Sheriff Grantham on March 1, 1979. *Id.* Magwood was convicted and sentenced to death for the murder in June 1981. *Id.* at 920 n.1. On direct appeal, the Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Magwood's conviction and death sentence. *Id.* at 929, *aff'd Ex parte Magwood*, 426 So. 2d 929, 932 (Ala. 1983), cert. denied 462 U.S. 1124, 103 S. Ct. 3097 (1983).

On July 13, 1983, Magwood filed a petition for writ of error coram nobis in the Circuit Court of Coffee County. *Magwood v. State*, 449 So. 2d 1267, 1267 (Ala. Crim. App. 1984). This petition was denied and on March 20, 1984, the

5

Alabama Court of Criminal Appeals affirmed the denial of the coram nobis petition. *Id.* at 1268.

Magwood then filed a 28 U.S.C. § 2254 petition for writ of habeas corpus in the United States District Court for the Middle District of Alabama. On March 26, 1985, the district court upheld Magwood's conviction but conditionally granted the writ as to the sentence, based on the failure of the sentencing court to find two mitigating circumstances. *Magwood v. Smith*, 608 F. Supp. 218, 225-26 (M.D. Ala. 1985). This Court affirmed the district court's decision. *Magwood v. Smith*, 791 F.2d 1438, 1450 (11th Cir. 1986).

A resentencing hearing was conducted on September 17, 1986. *Magwood v. State*, 548 So. 2d 512, 513 (Ala. Crim. App. 1988). On October 2, 1986, the Alabama trial court, after considering the additional mitigating circumstances as ordered by the federal district court, again sentenced Magwood to death. *Id.* The Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Magwood's resentencing. *Id.* at 516, *aff'd*, 548 So. 2d 516 (Ala. 1988), cert. denied 493 U.S. 923, 110 S. Ct. 291 (1989).

Magwood filed an application in this Court for permission to file a second habeas corpus petition in the district court challenging his conviction, which we denied. *In re Magwood*, 113 F.3d 1544, 1553 (11th Cir. 1997). Magwood filed a

6

second habeas petition challenging his resentencing on April 23, 1997. The district court granted in part and denied in part Magwood's second habeas petition. *Magwood v. Culliver*, 481 F. Supp. 2d 1262, 1295 (M.D. Ala. 2007).

## II. ANALYSIS

To determine whether the application of *Kyzer* to Magwood's case was a violation of the fair-warning requirement of the Due Process Clause we must first set out the relevant portions of Alabama's death penalty statute at the time of Magwood's offense. We then discuss the effect of *Kyzer* and *Stephens* on Magwood's eligibility for the death penalty. Finally, we conclude Magwood can overcome any procedural default and that the application of *Kyzer* violated the fair-warning requirement of the Due Process Clause.

### A. The 1975 Act

Magwood murdered Sheriff Grantham on March 1, 1979. At that time, Alabama's death penalty statute provided in Alabama Code § 13-11-2(a)(5) (1975):[4]

> (a) If the jury finds the defendant guilty, it shall fix the punishment at death when the defendant is charged by indictment with any of the following offenses and with aggravation, which must also be averred in the indictment, and which offenses so charged with said aggravation shall not include any lesser offenses:

---

[4] Unless otherwise indicated, all cites to the Alabama Code are to the 1975 version.

7

(5) The murder of any police officer, sheriff, deputy, state trooper or peace officer of any kind, or prison or jail guard while such prison or jail guard is on duty or because of some official or job-related act or performance of such officer or guard.

Alabama Code § 13-11-4, entitled "Determination of sentence by court; court not bound by punishment fixed by jury" provided:

Notwithstanding the fixing of the punishment at death by the jury, the court, after weighing the aggravating and mitigating circumstances, may refuse to accept the death penalty as fixed by the jury and sentence the defendant to life imprisonment without parole, which shall be served without parole; or the court, after weighing the aggravating and mitigating circumstances, and the fixing of the punishment at death by the jury, may accordingly sentence the defendant to death. If the court imposes a sentence of death, it shall set forth in writing, as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, *which shall at least include the following*:

(1) One or more of the aggravating circumstances enumerated in section 13-11-6, which it finds exists in the case and which it finds sufficient to support the sentence of death . . . .

(emphasis added).

Magwood's crime, the murder of a law enforcement officer, is not listed as one of the aggravating circumstances in § 13-11-6. Additionally, the resentencing court specifically found that Magwood's crime did not qualify him for any of the aggravating circumstances enumerated in § 13-11-6.

8

Thus, although Magwood's conviction under § 13-11-2(a)(5) forced the jury to fix the punishment at death, the judge could nonetheless have sentenced Magwood to life imprisonment without parole. Magwood asserts that under § 13-11-4, the judge was required to set forth an aggravating circumstance from § 13-11-6. Magwood contends that because he indisputably did not have an aggravating circumstance listed in § 13-11-6, the judge was required to sentence him to life imprisonment.

*B.* Ex parte Kyzer

Kyzer was tried and convicted under Alabama's 1975 death penalty statute, § 13-11-2(a)(10), for first degree murder "wherein two or more human beings are intentionally killed by the defendant by one or a series of acts." *Kyzer*, 399 So. 2d at 332. The Alabama Supreme Court concluded there was an evidentiary basis for lesser included offense instructions in Kyzer's case, and thus reversed and remanded for a new trial to be conducted in conformance with *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382 (1980).[5] *Kyzer*, 399 So. 2d at 333.

_____

[5] In *Beck v. Alabama*, the United States Supreme Court found fault with the Alabama death penalty scheme because it failed to allow a jury in a capital case to consider lesser included, noncapital offenses. 447 U.S. 625, 627-28, 100 S. Ct. 2382, 2384-85 (1980). On remand, the Alabama Supreme Court determined the preclusion clause could be removed from the statute, allowing the Alabama rule on lesser included offenses in noncapital cases to apply to capital cases. *Beck v. State,* 396 So. 2d 645, 658-59 (Ala. 1980). The Alabama Supreme Court further decided the statute required jury participation in the sentencing process, and created the necessary procedures by adding an additional stage to the trial of a capital case. *Id.* at 659-62.

The Alabama Supreme Court went on to address the issue of whether the death penalty would be an available option to the State if Kyzer was retried. Kyzer, like Magwood, was convicted of an aggravated offense in § 13-11-2 for which the legislature failed to provide a corresponding aggravating circumstance in § 13-11-6. The Alabama Supreme Court stated: "[t]his case presents in purest form an anomaly in Alabama's Death Penalty Statute." *Id.* at 334. The Alabama Supreme Court concluded "[a] literal and technical reading of the statute" would lead to the conclusion that if the trial judge cannot find the existence of an aggravating circumstance other than the charge averred in the indictment, the trial judge must refuse to accept the death penalty as fixed by the jury. *Id.* at 337. The Alabama Supreme Court could think of no reason the Alabama legislature would have imposed such a result, however, and concluded the trial judge is authorized to use the charge averred in the indictment in lieu of an aggravating circumstance listed in § 13-11-6 to impose a sentence of death. *Id.* at 337-38.

*C.* Ex parte Stephens

In 2006, the Alabama Supreme Court held the discussion in *Kyzer* regarding the aggravating circumstances in sentencing was dicta and "completely irrelevant to our decision." *Ex parte Stephens*, 982 So. 2d at 1152-53. The Alabama Supreme Court rejected the conclusion that the jury and the trial judge could find

10

the charge averred in the indictment as the aggravating circumstance even though

the charge is not listed in § 13-11-6[6] as an aggravating circumstance. *Id.* at 1153.

The Court stated "*Kyzer* did not 'hold' anything with respect to sentencing," and

its discussion of aggravating circumstances "was premature and should not be

persuasive." *Id.* The Court reasoned:

> [T]he dicta in *Kyzer* conflicts with the plain language of the Alabama
> Criminal Code (as the *Kyzer* Court itself acknowledged). Section [13-
> 11-6] states that "[a]ggravating circumstances shall be the following."
> The language "shall be"–as opposed to "shall include"–indicates that
> the list is intended to be exclusive. . . . *Our dicta to the contrary in*
> Kyzer *was incorrect.*

*Id.* (emphasis added).

D. *Whether Magwood was eligible for the death penalty*

Magwood's claim and the State's appeal are based on the retroactive

application of *Kyzer* to his case. The Alabama Supreme Court has held in

unambiguous, clear language that *Kyzer* is incorrect. Thus, we must determine

whether Magwood's death sentence violated the fair-warning requirement of the

---

[6] Although *Stephens* refers to § 13A-5-49, the opinion specifically states that § 13A-5-49 was previously § 13-11-6 (1975). *Stephens*, 982 So. 2d at 1152. Additionally, Kyzer was convicted under the 1975 statute. *Kyzer*, 399 So. 2d at 332. To the extent the State argues that *Stephens* expresses no opinion on the 1975 statute, that argument is meritless.

11

Due Process Clause when the case that was retroactively applied to him has since been held to be dicta and incorrectly decided.[7]

*Stephens* tells us that *Kyzer* should not have applied to Magwood's case. Therefore, Magwood was not eligible for the death penalty at the time of his conviction. Regardless of the conclusion that Magwood was ineligible for the death penalty under Alabama law, we must still consider whether Magwood has established a constitutional violation upon which federal habeas relief may be granted.

### E. Procedural default

The State first argues Magwood has procedurally defaulted his constitutional claim that he did not have fair warning by failing to raise it in the State courts. Even assuming, *arguendo*, that Magwood did not sufficiently raise this claim, any procedural default is excused because Magwood meets the test of being actually innocent of the death penalty, as explained in *Sawyer v. Whitley*, 505 U.S. 333, 346-47, 112 S. Ct. 2514, 2523 (1992). "*Sawyer* excuses procedural default . . . when a petitioner shows by clear and convincing evidence that, but for

---

[7] We are not certifying this question to the Alabama Supreme Court because the answer is settled. We certify questions to that Court when "we find no controlling precedent on point under Alabama law and [] the resolution of th[e] appeal hinges on [an] unsettled aspect of Alabama law." *See Ohio Cas. Ins. Co. v. Holcim (US), Inc.*, 548 F.3d 1352, 1358 (11th Cir. 2008). Here, Alabama's precedent could not be clearer, the "dicta . . . in *Kyzer* was incorrect." *Stephens*, 982 So. 2d at 1153.

a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Cade v. Haley*, 222 F.3d 1298, 1308 (11th Cir. 2000) (quotations omitted). The actual innocence requirement focuses on those elements that render a defendant eligible for the death penalty. *Sawyer*, 505 U.S. at 345, 112 S. Ct. at 2522. This Court has explained that "the actual innocence exception applies to constitutional errors in capital sentencing only when the constitutional error resulted in the petitioner becoming statutorily eligible for a death sentence that could not otherwise have been imposed." *Gilbert v. United States*, 640 F.3d 1293, 1320 (11th Cir. 2011) (en banc); *see also Cade*, 222 F.3d at 1308 ("[A] showing of actual innocence can only refer to those state-law requirements that must be satisfied to impose the death penalty, *i.e.*, the elements of the capital crime and minimum required aggravating factors.").

Here, the only aggravation found by the sentencing body was the murder charge in the indictment. *Stephens* tells us that the charge of the murder of a law enforcement officer should not have been used as an aggravating circumstance to impose the death penalty, as it was not listed in § 13-11-6. *See Stephens*, 982 So. 2d at 1153.

We conclude that but for the alleged violation of the fair-warning requirement of the Due Process Clause, the judge could not have found any statutory aggravating factors and Magwood was therefore ineligible for the death penalty. *See Gilbert*, 640 F.3d at 1320. Thus, even if Magwood's claim is procedurally defaulted, he is the rare capital defendant who meets *Sawyer*'s actual innocence exception and his procedural default is excused. *See Sawyer*, 505 U.S. at 346-47, 112 S. Ct. at 2523. We turn now to the constitutional error that Magwood has established.

*F. Fair warning*

As an initial matter, because Magwood arguably procedurally defaulted this claim, we do not have a state court adjudication of his fair-warning claim and our "review is not subject to the deferential standard that applies under [the Antiterrorism and Effective Death Penalty Act of 1996] to any claim that was adjudicated on the merits in State court proceedings." *See Cone v. Bell*, 556 U.S. 449, 129 S. Ct. 1769, 1784 (2009) (quotations omitted). "Instead, the claim is reviewed *de novo*." *Id.*

Due process prohibits the retroactive application of judicial interpretations of criminal statutes that are "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Rogers v. Tennessee*, 532

14

U.S. 451, 461, 121 S. Ct. 1693, 1700 (2001) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 354, 84 S. Ct. 1697, 1703 (1964). In *Bouie*, the Supreme Court stated that "a deprivation of the right of fair warning can result . . . from an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *Bouie*, 378 U.S. at 352, 84 S. Ct. at 1702 (quotations omitted). "If a judicial construction of a criminal statute is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue, it must not be given retroactive effect." *Id.* at 354, 84 S. Ct. 1703. *Rogers* later clarified that if a judicial decision is a "routine exercise of common law decisionmaking in which the court brought the law into conformity with reason and common sense" rather than "a marked and unpredictable departure from prior precedent," its retroactive application to conduct that occurred before the decision was made would not contravene the fair-warning principle of the Due Process Clause. *Rogers*, 532 U.S. at 467, 121 S. Ct. at 1703.

"Although petitioner's claim is one of due process, the Constitution's *Ex Post Facto* Clause figures prominently in his argument." *See id.* at 456, 121 S. Ct. at 1697. This clause provides that "'[n]o State shall . . . pass any . . . ex post facto Law.'" *Id.* (quoting U.S.Const. art. I, § 10, cl. 1). The *Ex Post Facto* Clause prohibits four distinct categories of legislative action: laws that (1) make innocent

15

conduct criminal, (2) "aggravate[] a crime, or make[] it greater than it was, when committed;" (3) "change[] the punishment, and inflict[] a greater punishment," and (4) "alter[] the legal rules of evidence . . . in order to convict the offender." *Id.* (quoting *Calder v. Bull*, 3 Dall. 386, 390 (1798)). Although the *Ex Post Facto* clause deals with legislative action, the Supreme Court has observed that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process." *Id.*

Magwood's due process claim falls into the third *Calder* category. The State asserts that *Bouie* only dealt with *Calder*'s first category, and that the Supreme Court clarified in *Rogers* that "nowhere in the [*Bouie*] opinion did we go so far as to incorporate jot-for-jot the specific categories of *Calder* into due process limitations on the retroactive application of judicial decisions." *Id.* at 459, 121 S. Ct. at 1699. The State contends the Supreme Court has not incorporated the third *Calder* category, retroactively increasing *punishment*, into the Due Process Clause. This Circuit has never decided this issue. *See United States v. Duncan*, 400 F.3d 1297, 1307 n.12 (11th Cir. 2005) ("assum[ing] *arguendo*, without deciding, that *Rogers*' fair warning principle does apply to retroactive increases of punishment as well as to the core *Calder* category of retroactive criminalization of conduct").

16

If, as the State suggests, we decline to extend *Calder*'s third category to *Bouie*'s holding in a capital case, it would necessarily "mean that no judicial expansion of a death-qualifying [aggravating] circumstance could ever be challenged under *Bouie* on retroactivity grounds." *See Clark v. Brown*, 450 F.3d 898, 912 (9th Cir. 2006). Even though the Supreme Court has not explicitly incorporated the retroactive increase of punishment into its *Bouie* holding, we are mindful that "death is a different kind of punishment from any other which may be imposed in this country." *Gardner v. Florida*, 430 U.S. 349, 357, 97 S. Ct. 1197, 1204 (1977). *Sawyer* instructs us that convicting someone of a capital offense as opposed to a non-capital one is not a mere enhanced sentence, it is a sentence for which one can be "innocent." *Sawyer*, 505 U.S. at 345, 112 S. Ct. at 2522. Thus, while we express no opinion in the context of non-capital cases, we conclude that a capital defendant can raise a *Bouie* fair-warning challenge to a judicial interpretation of a statute that increases his punishment from life to death. *See Clark*, 450 F.3d at 913-16 (conducting a *Bouie* analysis of a death-qualifying special circumstance statute to determine whether it had been improperly expanded and retroactively applied); *Webster v. Woodford*, 369 F.3d 1062, 1073-75 (9th Cir. 2004) (same).

In Magwood's case, we conclude that *Kyzer* was "an unforeseeable and retroactive judicial expansion of narrow and precise statutory language." *See Bouie*, 378 U.S. at 352, 84 S. Ct. at 1702. Alabama's death penalty statute provided that a jury should fix the punishment at death for a defendant who murders a law enforcement officer. Ala. Code § 13-11-2. Thus, Magwood's punishment should have been fixed at death by a jury. However, Alabama's statutory process for imposing the death penalty did not end with the jury fixing the punishment at death. The judge was required to perform an additional step. "Notwithstanding the fixing of the punishment at death by the jury . . . the court . . . shall set forth in writing as the basis for the sentence of death, findings of fact from the trial and the sentence hearing, which *shall* at least include . . . [o]ne or more of the aggravating circumstances enumerated in section 13-11-6." Ala. Code § 13-11-4 (emphasis added). There is no dispute that § 13-11-6 did not have a corresponding aggravating circumstance for the crime for which Magwood was convicted–the murder of a law enforcement officer. Additionally, the resentencing court specifically found that Magwood's crime did not qualify him for any of the aggravating circumstances listed in § 13-11-6.

Magwood became "eligible" for the death penalty only when *Kyzer* interpreted the statute to allow the charge in § 13-11-2 to be used in lieu of a § 13-

18

11-6 aggravating circumstance for purposes of the judge's written sentencing findings.[8]  The Alabama Supreme Court admitted in *Kyzer* that "[a] literal and technical reading of the statute" would not allow a defendant to be sentenced to death absent an aggravating circumstance as provided in § 13-11-6.  *Kyzer*, 399 So. 2d at 337.  Magwood did not have fair warning that a court, when faced with an unambiguous statute, would reject the literal interpretation.  This conclusion is buttressed by the Alabama Supreme Court's pronouncement that "[t]he dicta in *Kyzer* conflicts with the plain language of the Alabama Criminal Code" and that *Kyzer* was "incorrect."  *Stephens*, 982 So. 2d at 1153.

We conclude that *Kyzer*'s interpretation of the Alabama death penalty statute was an unexpected and indefensible construction of narrow and precise statutory language.[9]  *See Bouie*, 378 U.S. at 352, 84 S. Ct. at 1702.  The

---

[8]  This fact makes the State's argument pursuant to *Dobbert v. Florida*, 432 U.S. 282, 293-94, 97 S. Ct. 2290, 2298 (1977), unpersuasive.  In *Dobbert*, the Supreme Court concluded that a change in Florida's death penalty selection procedure was not an *ex post facto* violation because the changes in the death penalty statute between the time of the murder and time of the trial were procedural and on the whole ameliorative.  In contrast to Magwood's case, the changes in Florida's law "altered the methods employed in determining whether the death penalty was to be imposed; *there was no change in the quantum of punishment attached to the crime.*"  *Id.* at 293-94, 97 S. Ct. at 2298 (emphasis added).  Unlike *Dobbert*, the retroactive application of *Kyzer* did change the quantum of punishment attached to a defendant who did not have an aggravating circumstance as listed in § 13-11-6.

[9] To the extent the State argues that *Kyzer* was expected and defensible by reference to the law which had been expressed prior to Magwood's conduct, we reject that argument.  *See Keller v. State*, 380 So. 2d 926, 937 (Ala. Crim. App. 1979) (decided before Magwood committed his crime and invalidating one of the aggravating circumstances weighed against the

19

application of *Kyzer* to Magwood's case violated the fair-warning requirement of the Due Process Clause.  Thus, we affirm the district court's grant of Magwood's habeas petition.

**AFFIRMED.**

---

defendant, stating "[t]he first aggravating circumstance [that the capital felony was committed while engaged in a robbery] describes the crime charged in the indictment and cannot be used as both the criminal charge and the circumstance aggravating that charge").  The case cited by the State purporting to show that Magwood should have had fair warning states: "An aggravating circumstance is implicit in the statute and necessarily is considered by the jury when fixing punishment."  *Harris v. State*, 352 So. 2d 479, 284 (Ala. 1977).  Magwood is not arguing he did not have fair warning that the *jury* would consider his charge for murdering a police officer in fixing his punishment at death, Ala. Code §13-11-2.  His argument is that he did not have fair warning that this statutory provision could be used in lieu of an aggravating circumstance in § 13-11-6 for purposes of the ultimate sentence of death by the *judge*.

20